Good morning. We will call the cases off the calendar in the order in which they are listed. The first is Keech v. Henderson. Counsel, you may begin. Good morning, Judge Trott and honorable members of the Court. Thank you for the opportunity for our oral argument, and we're very honored and pleased to be here this morning with you. May it please the Court. Your Honors, I respectfully request to all of you to please stand and be seated. We have two minutes of rebuttal and conclusion time, if I may. Keep your own time. Thank you. And, Your Honor, my law partner, Cynthia Miller, who is with me today, will be presenting that to the courts at that time. Thank you. This Court has the opportunity with this case to literally string pearls. By that, we mean that each alleged act of discrimination in this case, beginning with Mr. Keech's request for dependent care leave back in April of 99, must be stringed together so that the entire chain or necklace emerges. Don't we have a problem with subject matter jurisdiction on some of the charges that he brought? Your Honor, we'd like to address that by the following. The Court below, in dismissing and granting summary judgment, addressed that as the appellant, Mr. Keech, not making the prima facie prongs in his own. Mr. Keech did allege evidence on record, and through his argumentation, to make the prima facie prongs so that the court would be able to make the prima facie prongs. The Court does have jurisdiction. Well, if you go back to the EEOC complaint of discrimination, his only checkmark was on sex, and he writes gender harassment. There's no mention at all of retaliation or hostile workplace. As a matter of fact, there's a box that says retaliation specify prior EEO activity, and it's not checked. And it seems that even though the Ninth Circuit has a very generous view of this, that it's very difficult to figure out that he exhausted his remedies on this. Therefore, we don't have any jurisdiction at all over the hostile work environment or the retaliation, do we? Well, what we're arguing, Your Honor, to that point is that going back to your point of the gender discrimination initial complaint, we believe there are a couple of important points. The investigation, and we have case law in this very circuit that speaks to the issue of the original EEO complaint and what that encompasses. That complaint, which is on the record, encompassed two very important issues which are retaliatory in nature. And this Court has said that the other acts alleged in the complaint, then later stemming therefrom, which are indeed retaliatory and hostile environment-oriented in nature, can be encompassed. But your client limited his complaint to February 10, 1999 in the doctor's note. And the idea is to give the agency an opportunity to respond and for the administrative process to work its way out. And one of the complaints about your position here is that that didn't happen, and so the only thing we can look at is gender discrimination. I take it if the EEOC investigated and they concluded in their expertise that the doctor's note was a retaliatory as opposed to a gender-based problem, that that would be within the EEOC's purview, given they're the experts, and a layperson might check the wrong box. Or maybe he could have checked both gender and retaliation. So what, assuming that that were, just for argument purposes, were the case, what was the act of retaliation or the event for which the doctor's note would have been retaliation, had they at least looked at the claim that he made with respect to the particular date in question? And, Your Honor, we are arguing just precisely the point that you're making. The retaliatory event, which is embedded in the EEO investigation on the record, is that in Mr. Keach's request for dependent care leave, as the EEO investigation yields, that he was asked for documentation, the doctor's note, which the Court is well aware. Now, what grew out of that — would have been retaliating for? Was it being listed as a witness? Yes. That's the only thing that had occurred at that point, correct? That's correct. All right. And that was one and a half months prior to that. Now how? That was a retaliatory event for being named as a witness in another postal employee's EEO complaint. Let's assume, therefore, that what was, at least as far as his complaint went at that point, assuming it got, for whatever reason, got limited to events predating February 10th and that was being listed as a witness, what's your argument as to why that is something for which retaliation claims would lie, since he was never actually called. He was simply listed. Why is it retaliatory in nature, Your Honor? Yes. Well, retaliatory in nature by virtue of our case law, which says any type of activity that would limit an employee's ability to be able to be, I'll use the word, protected or safe in participating in any manner in any kind of investigation, et cetera, et cetera. All right. Was the evidence that he was aware of having been listed before February 10th when he was asked for the medical information, the note? Your Honor, I believe that that is well stated in the record. He was aware. Yes. All right. And then the defense to it was, I gather, that he was actually requested for that information for a perfectly legitimate reason. What evidence did you have to rebut that? In regards to the doctor's note? Yes. Well, and again, the record – and what we're trying to do, as the Court is well aware, is jump the hurdles at least to proceed with our case and reverse summary judgment. And as we know, there needs to be a dispute on the record of a material fact. And what we presented, we being Mr. Keech's advocates, is a lot of information dealing with just whom was asked for notes and why and what that vast array of notation looked like. But it seemed to me from reading the briefs that others asked weren't just men. In other words, I didn't see what the gender discrimination element was of your evidence on that. It looked like what you presented was maybe that somebody didn't like the appellant. He was treated more harshly than some other people in terms of a request for notes. But it didn't seem, you presented, that men were always asked for notes and women weren't. Do I misread the record of what you submitted? The evidence may appear that way because there is, if I may use the term, a mixed bag of evidentiary letters that were submitted on that point. However, there is sufficient evidence in that very narrow regard that shows for the threshold of the 3-day, the Postal Service rule, according to the Postmaster, is the note required for an excess of 3 days. And there is enough questionable notes having been provided by credible witnesses on the record that that is not the case in repeated female cases. And we presented it, and we're arguing that that presents a factual dispute for a trier of fact to look at how that evidence is presented. The fact that there's a dispute, though, doesn't get you there, does it? You have to also show evidence that would sustain some kind of a verdict in your favor. And it seems here there's no connection between being listed as a witness and then the doctor's note thing. And other men indicated that they weren't asked for notes. So, I mean, how does this whole thing tie together? Well, it ties together, Your Honor, in that in the long or the longitudinal view of the history of the case, which we have on record, there is a pattern of harassment. And that is one of our main points of argumentation, our hostile work environment that is retaliatory in nature and stems from the very beginning of that January 99 filing from another postal employee, which Mr. Keech was named as a witness, all the way through the events over time that, Your Honor, may I take leave, too? You can finish your answer. Answer. Okay. So we're asking the Court to string together the adverse employment definition broadly defined by this Court. Adverse employment action. Action, yes. Broadly defined by this Court in Ravy-Henderson, and to take a longitudinal view of what that Court dealt or this Court dealt with in first impression, and that was that hostile work environment over time, and we're looking from 99 to when Mr. Keech filed his amended complaint in December 2001. That's a long time. As a pattern of harassment to make the anti-retaliation prong. And we definitely have to string together definitions to be able to do that. But we feel that's broadly stated enough by this Court to relate back to the initial gender discrimination complaint with a layperson filling out that report to the investigation encompassing retaliatory actions, with retaliatory motive of the supervisor, in this case stalking Mr. Keech to see if he indeed was on leave or not after work hours, and calling his son's school to find personal information. If those are not retaliatory, I think they fit in the definition under Ray. Thank you, counsel. We'll retain two minutes for your co-counsel to respond. We'll hear from the other side. Thank you very much, Your Honor. May it please the Court. My name is Joanne Rodriguez, and I represent the Postmaster and the Postal Service in this case. First, Judge Fischer, getting to your point about was perhaps the action of requiring a doctor's note retaliation in and of itself, my position is that there are two problems with that. One, even though Mr. Keech said he believed that he had been listed as a witness in a complaint that had been filed a couple of months earlier, there's no credible evidence of that. Mr. Keech's attorneys did not put into evidence the fact that there's no credible. I get nervous whenever you start using modifiers. There is evidence of that, but it's not credible? It's not credible, and it's not. Credibility for a jury? It's – I'm sorry. Isn't credibility always for a jury? No. I think, Your Honor, the Court needs to look to see whether there is sufficient evidence on which a jury could return a verdict, and here there's two problems. One, Mr. Keech's statement that he was listed as a witness is the only witness evidence, and it is – What's the matter with that? It's hearsay. He did not see any document. He does not know any document that lists that, and we've – Did he say he didn't see any document? Correct, he did. On his deposition, Your Honor, which is in the record at pages 42 to 44, he never saw any document. He never knew what document he was listed on, and he did not put into evidence any document showing, indeed, that he was even listed as a witness. Well, from a dispute that he was, in fact, listed. I don't know, Your Honor. I haven't seen this woman's complaint to know whether or not he was, but I certainly dispute that there is sufficient evidence in the record from what – from which Was that one of the grounds on which the district court decided that there was no credible evidence? Did somebody attack it as hearsay? No, Your Honor. Or was it just coming to us for the first time in the Ninth Circuit? The district – the magistrate judge did not make his finding based on that. He made his finding based on the fact that even if he were listed as a witness, that that's not protected activity. And that's – Did the government identify it as hearsay and ask that it not be considered? And then if that had been the case, the other side might have had an opportunity to bring in the documents to show that it was. Yes, we did move – You did. We did move to strike as hearsay his affidavit in which he gave that evidence. The court did not rule on that, said it was not necessary because of the rulings that he was making. I assume you lose on that. Is it really your position that being listed as a witness in an EEOC complaint is not protected activity? Yes. You think that it wouldn't be chilling for someone to be listed as a witness and then be – suddenly have harassing actions taken against – against them? Yes, that's my position, Judge. I don't know of any – I don't know of any case law that supports the position that being listed as a witness is protected activity. What about the principle that the idea of not chilling the EEOC process would be involved if I get listed as a witness and suddenly my employer starts acting funny toward me? Do you think that might be a little chilling effect on cooperating as a witness? Judge, I think the law is that you have to do something in order to be chilled. He doesn't do anything by being listed. I mean, do something. You have to give an interview. You have to write a statement. All right. Because that's the law. If I'm making a – wait a minute. You say that's the law. You said you don't have any cases. No, no. Or is it the law that being listed as a witness is not enough? Well, Your Honor, there's no law that says that it is. Well, but there's – that's why I'm coming back to the principle. The principle of our cases is that you don't take actions against employees who may be participating, which is the language of the statute, participating in the process. Being listed as a witness, it seems to me, is participating. If you as an AUSA produce your witness list in court, okay, in a criminal trial, and nobody's given an interview but you're planning to call somebody as a witness and somebody starts taking some funny action with them and they decide not to cooperate, are you saying that there's no interference or intimidating of witness there? I think that's a different situation, Your Honor. The statute and the cases define protecting – protected activity as making a charge, testifying, or participating in any way. That's an active verb in my interpretation of it, Justice Breyer. You're asking us to write an opinion that says that people who are listed as witnesses for EEOC activity can then be descended upon by the gargoyles of the agency, ripped to shreds, and there's nothing anybody can do about that? Well, yes, that's what I'm asking you to do, although I don't think that you need to do that because – Can I suppose that? That's a pretty tough position to take, isn't it? I mean, witnesses are key, key components of the EEOC. How many times do lawyers stand up and say no credible evidence, no witnesses, no everything else? So here you have witnesses listed and all of a sudden the agency tries to batter them out of the process and you would have us write an opinion saying they can batter them all they want and we can't do anything about it? Well, I would hope that you wouldn't go that far, Judge. I hope you would limit it to what I'm actually asking you to do, which is just to follow the law, which is that there is an active component to participating in an EEOC complaint. Who has to take the action, the witness? Yes. In Judge Trott's hypothetical, the witness hasn't done anything. Correct. Okay, so it can be battered and gargoyled and whatever else, epithets we want to attach to it. Correct. As interesting as all this battering and gargoyle stuff is, explain to me why we reach this issue of retaliation. If the initial EEOC complaint did not assert retaliation, how is the Federal Court complaint reasonably related? Is it reasonably related to the initial complaint? I think there's a minor part of it that is, Judge, and there's a minor part that we did not move to dismiss. Right. But as to this part, is this part within the initial complaint? No. So should we be considering this issue of whether gargoyles in the agency are depending on the appellant? I don't think so, Judge. So let me understand. My question is not a question of sympathy. It's a question of jurisdiction. Right. Do we have jurisdiction to even assess that? I don't think so. So the fact that he checked gender instead of retaliation for an event to which he claims he was at adverse action taken precludes our jurisdiction? I think so, Judge. And it also is it's not reasonably related. In other words, if the EEOC had investigated the gender complaint, right? The complaints you're saying or the woman's? Let's assume this set of facts. I go in because I think I look at the form, and I think that I was listed as a witness. Now they're taking this action against me, which they didn't take against any women. That's my viewpoint. Okay. So I go to the EEOC. I'm pro se. I don't have a lawyer. And I look at the boxes, and I check gender. And I don't check retaliation. He said because I failed to check retaliation, it's not reasonably related. I think that's right, Judge. And also in this case, of course, Mr. Keech said he didn't even believe it when he checked it. Well, because he probably, if he'd known what retaliation, the concept of retaliation, maybe he might have checked that. Well, actually, what he told me, Judge, in his deposition, is if he'd known that you could say you were discriminated against because you were over 40, he would have checked that. He just alleged the gender thing, he called it, in order to get before the EEOC. I thought that in his first complaint that he was focused on a particular day, like one day of time, where he was asked to get this doctor's excuse for taking off. Whereas in the retaliation claim in the federal court complaint, he's focused on, you know, years of conduct. Right. And in fact How can a claim in federal court that focuses on years of varied conduct be reasonably related to an assertion that there was a discrimination against him in asking him to get a doctor's slip one day? Well, I don't think it is. And if the court holds that it is, then it means that the administrative process, which is supposed to be used to sort this out initially, is circuited and plaintiffs are not. Well, aside the box he checked, I mean, I have some, I would have some concern if he told a story that was consistent in the EEOC complaint and the federal court complaint, but he checked the wrong box. But what was the story that he alleged in the EEOC complaint? The story was that because he was a male, that his supervisor required him to bring in a doctor's note when he wanted to stay home with his child. With his sick child. Because he was a single parent. And what was the story that was alleged? By story, I don't mean to suggest false. And what were the allegations of the complaint in federal court? That he was discriminated against because of his gender. Because he supported another worker's complaint, because he supported his spouse's complaint. Correct. And that subsequently he was harassed by people taking a comic strip down from his case and by telling him he couldn't wear headphones in the office and his supervisor watching him on the job, all of that. Did he allege specifically in the federal court complaint that the request for a doctor's slip was retaliation? I believe at least in the amended he did, Your Honor. I'm afraid I don't have an exact memory of that. My time is up. Unless the Court has any further statements, I think my brief covers this. Is there anything you missed that you'd like to tell us before you sit down? I hope not, Judge. Thank you. We'll hear from the other side. May it please the Court. Did Mr. Keech exhaust his administrative remedy? Does this Court have subject matter jurisdiction? Yes, it does. Mr. Keech chose to file his administrative EEO action earlier rather than later. Should he have waited? Should he have checked another box? Possibly so. Mr. Keech isn't a lawyer. He readily admits that. He didn't seek any legal advice that I'm aware of prior to filling out that complaint. He did it on his own. It never dawned on him at that moment in time when he signed that action that it was retaliatory, perhaps as an alternative to gender discrimination. He knew something was wrong. He knew he had been treated differently. But it still has to be reasonably related in content and substance. Another problem I have is the EEOC notified him by letter after the complaint was filed that the basis of the investigation would be sex discrimination and, quote, the investigation would include only the following issue, that on February 10 he was required to obtain a doctor's note, et cetera, et cetera. And he was told if he disagreed with the scope of that investigation, he could file written objections within seven days. He didn't apparently file any written objections. Did I miss something? Did he file written objections? No, he did not, Your Honor. So I agree with you. You know, he may not have known what he was doing, but what he did do doesn't line up in my thinking with what he now wants to have heard in Federal court. And he didn't exhaust the remedies on the other two claims. Well, again, Your Honor, to your point regarding like or related to, reasonably related to, I think that this Court's broad definition or broad interpretation of the definition of adverse employment action speaks to that very point. Mr. Keech, the factual pieces here that we're asking you to string together are like or related to, regardless of whether you call them gender discrimination or retaliation, something was going on there. And that's the question for the jury, what was going on. You're asking us to string together a whole bunch of things. But if you look at each one individually, isn't each one susceptible of a view that it's not an adverse employment action? I mean, the comic strip thing, is that an adverse employment action? He had a negative comment at the post office up, they asked him to take it down. How is that an adverse employment action? Your Honor, I'm out of time if I may answer your question. Of course. And again, I think that your very own case law speaks to that. One isolated incident may not adverse employment action make. But the isolated incident, I mean, it's a comic strip. He puts up a comic strip that's nasty to the post office, and they tell him to take it down. You know, and they get into a hassle over that. That doesn't sound like an adverse employment action. It seems that your definition of adverse employment action is anything that somebody doesn't like. Well, Your Honor, we How is simply being asked to get a doctor's note when that's within the prerogative of the Postal Service an adverse employment action? Where everyone around you, every other employee, has the very same kind of material in their work area. And they're not asked to take it down. You're looking at these things in the abstract. If you look at the facts of this case, I mean, isn't this unusual? According to the supervisor, he had an excessive amount of sick time down, and then he gets a call saying that the guy's at a bowling alley instead of being at home with his child. But your answer to that is that doesn't go to whether or not it's an adverse employment action. That's correct. It's a pretext. You have to look at the very facts of this case, which is the question for the finder of fact. So you think it's an adverse employment action to check up on somebody under those circumstances? Well, Your Honor, if you look at the record from below, Mr. Keech, pardon me, Your Honor. The fact that it is unusual is the very question for the finder of fact. It was quite unusual for those kinds of activities to be aimed at Mr. Keech when, generally speaking, other employees weren't required at those things. And during that time, these other EEO actions were pending. The Postal Service knew that there were complaints filed against them and that he was a key witness. The other side makes much out of the fact that we don't have any competent evidence showing that he was ever listed anywhere as a witness, that all we have is his statement and we have no documents or anything else. Do you have an answer to that? Yes, Your Honor. Mr. Keech himself stated, and unless there's evidence that he's not credible and there's nothing on the record that he's an uncredible witness, his affidavit and testimony is enough for purposes of summary judgment. Well, what foundation is there for that? I mean, was he told? If we read the record, we'll find out he was told by somebody. He saw a document. Yes, Your Honor, exactly. Yvonne Caudill, the first EEO complaint that was filed where he was listed as a witness, was his girlfriend at the time and is now his wife. And that's how he says he was told he was listed as a witness, or we can infer that from the facts? Yes, Your Honor. Is that hearsay? No, because both witnesses would be available for trial to testify. That's getting past me, that one. If somebody says something that's hearsay but a witness would be available later, you mean it's not hearsay? Where Mr. Keech has filed an affidavit for purposes of this action at this time. Filed an affidavit opposing summary judgment, let's say. Correct. Opposing a motion for summary judgment. And it says, I was told by X that I was a witness. Correct. And if we went to trial, it would be admissible because Yvonne Caudill would be called to testify that, yes, she told him that. And that would not be hearsay. Both witnesses are in the courtroom available for cross-examination. But is there authority that says that that affidavit is admissible on the summary judgment? I know that there's some courts, some precedent gives a more liberal standard on summary judgment than a trial on admissibility. But others say that the affidavits have to be admissible. And, Your Honor, I would have to ask the Court for leave to brief that very question. I hadn't anticipated that question for today's hearing. Your position is that he's confident to say he was a witness and he could base that on what his spouse or former friend, now spouse, told him because she'd be available later. That's correct, Your Honor. Your case seems to hinge pretty much on the fact that he was listed as a witness in the EEOC complaint. Is that right? And that's why he was retaliated against? That's one component of it, yes. What evidence is there to show that the person who was doing the retaliation knew that he was listed as a witness? By the very EEO procedure, Your Honor. When a complainant files a complaint with the EEOC, it's immediately sent to the employer for a response. And that is documented at that time. So it was sent to the post office? Yes, Your Honor. So we can infer from that that the person who's doing the retaliation knew about it? Yes, because on that EEO complaint, the witnesses are listed. Thank you. Thank you. The case just argued is ordered and submitted. Thank you, counsel. We'll get to your decision as soon as we can figure out the answer. Thank you. We'll call the next case, which is United States of America v. J. Michael McGinnis.
judges: Trott, Fisher, Gould